**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

SANDRA L. GWOREK, on behalf of herself
and on behalf of all others similarly situated,

SHENAIE N. MACLAURY, on behalf of
herself and on behalf of all others similarly
situated,

FRANK L. CORTRIGHT, on behalf of
himself and on behalf of all others similarly
situated,

SEAN POLLEY, on behalf of himself and on
behalf of all others similarly situated,

B AND B FUNDING, on behalf of itself and
on behalf of all others similarly situated,

DOROTHY SPIKES, on behalf of herself
and on behalf of all others similarly situated,

MATTHEW A. DEWERT, on behalf of
himself and on behalf of all others similarly
situated,

CYNTHIA DENNINGER, on behalf of
herself and on behalf of all others similarly
situated,

DONNA WILSON, on behalf of herself and
on behalf of all others similarly situated,

       Plaintiffs,

       v.

CHAUTAUQUA COUNTY, NEW YORK,
Gerace Office Building
3 North Erie Street
Mayville, New York 14757

and

Case No.:

**CLASS ACTION COMPLAINT**
**WITH JURY DEMAND**

**CLASS ACTION**

1

KIMBERLY A. MELEEN,
Tax Enforcing Officer of the County of
Chautauqua
Gerace Office Building
Chautauqua County Offices
3 North Erie Street
Mayville, NY 14757

and

CHEMUNG COUNTY, NEW YORK
203 Lake Street
Elmira, NY 14902

and

KATLYN E. COLOMBANI, Chemung
County Treasurer
320 E. Market Street
Elmira, NY 14902

and

GENESEE COUNTY, NEW YORK,
15 Main Street
Batavia, New York 14020

and

SCOTT D. GERMAN
Treasurer of the County of Genesee
County Building 1
15 Main Street
Batavia, NY 14020

and

NIAGARA COUNTY, NEW YORK
c/o Richard E. Updegrove, County Manager
Philo J. Brooks Co. Office Bldg.
59 Park Ave., 2nd Floor
Lockport, NY 14094

and

KYLE R. ANDREWS
Treasurer of the County of Niagara
Philo J. Brooks Co. Office Bldg.
59 Park Ave., 1st Floor
Lockport, NY 14094
and

ONTARIO COUNTY, NEW YORK
20 Ontario Street
Canandaigua, NY 14424

and

JEFFREY S. TRICKLER
Ontario County Deputy Treasurer
20 Ontario Street, 2nd Floor
Canandaigua, NY 14424

and

ORLEANS COUNTY, NEW YORK,
14016 Route 31 West
Albion, NY 14411

and

KIMBERLY C.L. DeFRANK
Orleans County Treasurer
34 East Park Street
Albion, New York 14411

and

STEUBEN COUNTY, NEW YORK,
Steuben County Office Building
3 E. Pulteney Square
Bath, New York 14810

and

TAMMY HURD-HANEY,
Commissioner of Finance of Steuben County,
New York
Steuben County Office Building
3 E. Pulteney Square
Bath, New York 14810

and

WAYNE COUNTY, NEW YORK,
26 Church Street
Lyons, NY 14489

and

PATRICK J. SCHMITT
Treasurer of Wayne County
16 William Street
Lyons, NY 14489

and

WYOMING COUNTY, NEW YORK,
143 North Main Street
Warsaw, NY 14569

and

ROBIN LaWALL
Treasurer of Wyoming County
Government Center
143 N. Main Street, Suite 210
Warsaw, NY 14569

   Defendants.

## INTRODUCTION

   The State of New York came up with an idea to make money for its political subdivisions and tax entities. For nothing. Foreclosing on delinquent taxes and other legitimate obligations is something the law allows. But then New York used this very frequent situation of foreclosures to enact a statute that 'allowed' the keeping of ALL the money from the foreclosure. Not just the amount owed, but everything. Even the homeowner's excess equity. Admittedly, New York was not the only state that enacted this scheme. However, the U.S. Constitution prohibits the

government from taking property from a citizen in excess of what is owed without just compensation.

This protection *long* pre-dates the federal constitution. "The principle that a government may not take more from a taxpayer than she owes can trace its origins at least as far back as Runnymede in 1215, where King John swore in the Magna Carta that when his sheriff or bailiff came to collect any debts owed him from a dead man, they could remove property 'until the debt which is evident shall be fully paid to us; and the residue shall be left to the executors to fulfil the will of the deceased.' W. McKechnie, Magna Carta, A Commentary on the Great of King John, ch. 26, p.322 (rev. 2d ed. 1914) (footnote omitted)." *Tyler v. Hennepin County,* 598 U.S. 631, 639 (May 25, 2023).

This action is brought by the named Plaintiffs, for themselves and others similarly situated, to redress the constitutional violations practiced by Defendants in collecting from Plaintiffs and the putative class more than they owed the government, in violation of the Takings Clause of the U.S. Constitution, and in violation of other state and federal rights, as set forth below.

## JURISDICTION AND VENUE

1.      Subject matter jurisdiction over this action lies pursuant to 28 U.SC. §1331 based on the federal claims in this Complaint that arise under the Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution. Further, this action seeks relief under 42 U.S.C. §1983, for deprivation of rights guaranteed by the federal constitution accomplished under color of state law, over which original jurisdiction lies in this court pursuant to 42 U.S.C. §1343.

2.      This Court has supplemental jurisdiction over both legal and equitable claims in this Complaint arising under the laws of the state of New York law ("state law claims") pursuant to 28 U.S.C § 1367 because the state law claims "arise out of a common nucleus of operative facts" with the federal claims over which this Court has original jurisdiction.

3.      This action is properly venued in this federal District pursuant to 28 U.S.C. §§1391(b)(1) and (2) because the Defendants are located here; a substantial portion of the conduct giving rise to this action occurred here; and the property that is the subject of this suit is located here.

## CLASS ACTION ALLEGATIONS

4.      This action is brought on behalf of the Plaintiff and the following class:

All owners of property in Chautauqua, Chemung, Genesee, Niagara, Ontario, Orleans, Steuben, Wayne, and Wyoming Counties in the State of New York: 1) where such property was seized or otherwise subject to foreclosure for unpaid taxes and associated obligations; 2) the property was either a) sold in foreclosure, or b) retained by any governmental entity; 3) the amount received in the sale, or the value of the property taken, was more than the taxes owed, that is, was in excess of the amount of the owner's debt for which the property was taken; and 4) the owner was not given the excess. The class excludes Plaintiff's counsel and officers of the court handling this matter. The class period is the longest period allowed by law before the filing of this action, and thereafter.

5.      Plaintiffs and the class reserve the right under Rule 23, F.R.C.P. to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

6.      This action has been brought and may be properly maintained as a class action under the provisions of Rule 23 of the Civil Rules because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

**A.  <u>Numerosity</u>**

7.      Members of the proposed class are so numerous that joinder of all members is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiffs are informed and believes that there are hundreds of individuals in the Class.

**B.  <u>Commonality</u>**

8.      Common questions of law and fact exist as to all members of the proposed class. Such questions include, but are not limited to:

   a.   Whether New York laws allowing retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the U.S. Constitution;

   b.   Whether the practice against the named Plaintiffs and the putative class of retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the U.S. Constitution;

   c.   Whether the conduct alleged in this suit caused injury in fact to the Plaintiffs and the putative class members;

   d.   Whether Defendants, or any of them, should be restrained and thereafter enjoined from continuing to engage in the challenged practice;

   e.   Whether New York law allowing retention of excess proceeds, or property value, beyond the amount owed in taxes or other obligation for which the property was foreclosed, violates the New York Constitution;

   f.   Whether the practice against the named Plaintiffs and the putative class of retention of excess proceeds, or property value, beyond the amount owed in taxes

or other obligation for which the property was foreclosed, violates the New York Constitution;

g. What relief should be granted, if any, to the named Plaintiffs and the putative class;

h. Whether Defendants or any of them were unjustly enriched by retaining an excess as a result of their taking of the properties;

i. Whether the conduct alleged herein constitutes a taking of the property of Plaintiffs and the putative class in violation of the Fifth Amendment of the United States Constitution;

j. Whether the conduct alleged herein constitutes a taking of property of Plaintiffs and the putative class in violation Article I, Section 7 of the New York Constitution;

k. Whether the challenged provisions of New York state law enumerated in this Complaint violate the U.S. Constitution, and should be declared as unconstitutional;

l. Whether the challenged provisions of New York state law enumerated in this Complaint violate the New York Constitution, and should be declared as unconstitutional;

m. Whether Defendants, or any of them, are liable for inverse condemnation of the property of the named Plaintiffs and the putative class.

## C. **Typicality**

9. The claims of the Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly harmed by the wrongful conduct alleged here.

**D.  Adequacy of Representation**

10.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiffs are competent and experienced in class action and challenges to government taxes and fees litigation.

**E.  Superiority**

11.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practical, and common questions of law and fact exist to all class members.

12.     Class action treatment will allow all similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**F.  Rule 23 Further Requirements**

13.     Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for Defendants.

14.     Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

15.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final relief with respect to the class as a whole.

16.     Questions of law or fact common to the class members predominate over any questions affecting only individual members.

## PARTIES

17.     Plaintiff Sandra Gworek at all times relevant to this matter, was an owner of property located in Chautauqua County, New York and was the owner of certain real property that is the subject of this action.

18.     Defendant Chautauqua County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Chautauqua County is one of the Tax Districts described and discussed in this Complaint.

19.     Defendant Kimberly Meleen is the current Tax Enforcement Officer for the County of Chautauqua and is sued in his official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

20.     Plaintiff Shenaie N. MacLaury at all times relevant to this matter, was an owner of property located in Chemung County, New York and was the owner of certain real property that is the subject of this action.

21.     Defendant Chemung County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Chemung County is one of the Tax Districts described and discussed in this Complaint.

22.     Defendant Katlyn E. Colombani is the current Tax Enforcement Officer for the County of Chemung and is sued in her official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

23.     Plaintiff Frank Cortright at all times relevant to this matter, was an owner of property located in Genesee County, New York and was the owner of certain real property that is the subject of this action.

24.     Defendant Genesee County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Genesee County is one of the Tax Districts described and discussed in this Complaint.

25.     Defendant Scott D. German is the current Tax Enforcement Officer for the County of Genesee and is sued in his official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

26.     Plaintiff Sean Polley, at all times relevant to this matter, was an owner of property located in Niagara County, New York and was the owner of certain real property that is the subject of this action.

27.     Defendant Niagara County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Niagara County is one of the Tax Districts described and discussed in this Complaint.

28.     Defendant Kyle R. Andrews is the current Tax Enforcement Officer for the County of Niagara and is sued in his official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

29.     Plaintiff B and B Funding, at all times relevant to this matter, was an owner of property located in Ontario County, New York and was the owner of certain real property that is the subject of this action.

30.     Defendant Ontario County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Ontario County is one of the Tax Districts described and discussed in this Complaint.

31.     Defendant Jeffrey S. Trickler is the current Tax Enforcement Officer for the County of Ontario and is sued in his official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

32.     Plaintiff Dorothy Spikes at all times relevant to this matter, was an owner of property located in Orleans County, New York and was the owner of certain real property that is the subject of this action.

33.     Defendant Orleans County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Orleans County is one of the Tax Districts described and discussed in this Complaint.

34.     Defendant Kimberly C.L. DeFrank is the current Tax Enforcement Officer for the County of Orleans and is sued in her official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

35.     Plaintiff Matthew DeWert at all times relevant to this matter, was an owner of property located in Steuben County, New York and was the owner of certain real property that is the subject of this action.

36.     Defendant Steuben County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Steuben County is one of the Tax Districts described and discussed in this Complaint.

37.     Defendant Tammy Hurd-Haney is the current Tax Enforcement Officer for the County of Steuben and is sued in her official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

38.     Plaintiff Cynthia Denninger at all times relevant to this matter, was an owner of property located in Wayne County, New York and was the owner of certain real property that is the subject of this action.

39.     Defendant Wayne County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Wayne County is one of the Tax Districts described and discussed in this Complaint.

40.     Defendant Patrick J. Schmitt is the current Tax Enforcement Officer for the County of Wayne and is sued in his official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

41.     Plaintiff Donna Wilson at all times relevant to this matter, was an owner of property located in Wyoming County, New York and was the owner of certain real property that is the subject of this action.

42.     Defendant Wyoming County is a political subdivision and body politic of the State of New York, sued in its official capacity. Defendant Wyoming County is one of the Tax Districts described and discussed in this Complaint.

43.     Defendant Robin LaWall is the current Tax Enforcement Officer for the County of Wyoming and is sued in her official capacity as the County's enforcement officer, including for actions taken pursuant to New York Real Property Tax Law §1102 et seq.

44.     Defendant, State of New York, is a sovereign state of the United States sued in its official capacity.

**METHOD FOR TAKING PROPERTY WITHOUT JUST COMPENSATION
PURSUANT TO NEW YORK LAW**

45.     Plaintiff Gworek was the owner of certain real property located in Chautauqua County, New York, 124 S. Jerboa Street, City Dunkirk, New York, and known as LOC NO/APN/Parcel No. 060300-79.12-2-28 (the "Gworek Property").

46.     Taxes were owed to the Defendant Tax District, Chautauqua County, on the Gworek Property in the amount of, upon information and belief, approximately $6,713.87, including fees, interest and penalties. See Exhibit A, attached hereto and incorporated herein.

47.     Plaintiff MacLaury was the owner of certain real property located in Chemung County, New York, 1236 Ridge Rd., Horseheads, New York, and known as LOC NO/APN/Parcel No. 074089 10.00-1-20 (the "MacLaury Property").

48.     Taxes were owed to the Defendant Tax District, Chemung County, on the MacLaury Property in the amount of, upon information and belief, approximately $6,486.64, including fees, interest and penalties. See Exhibit B, attached hereto and incorporated herein.

49.     Plaintiff Cortright was the owner of certain real property located in Genesee County, New York, 4 Cooksville Rd., Town of Pembroke, New York, and known as LOC NO/APN/Tax Map/Parcel Nos. 17.-1-26.1 & 17.-1-26.2 (the "Cortright Property"). See Exhibit C.

50.     Taxes were owed to the Defendant Tax District, Genesee County, on the Cortright Property in the amount of, upon information and belief, approximately $3,725.91, including fees, interest and penalties.

51.     Plaintiff Polley was the owner of certain real property located in Niagara County, 4895 Shadigee Road, Wilson, New York, and known as Serial No. 2019-223, SBL# 51.00-2-2.112 (the "Polley Property").

14

52.     Taxes were owed to the Defendant Tax District, Niagara County, on the Polley Property in the amount of, upon information and belief, approximately $2,778.70, including fees, interest and penalties. See Exhibit D, attached hereto and incorporated herein.

53.     Plaintiff B and B Funding was the owner of certain real property located in Ontario County, New York, 4272 St. Rt. 14A, Seneca, New York, and known as LOC NO/APN/Tax Map/Parcel No. 132.00-1-49.000 (the "B and B Funding Property").

54.     Taxes were owed to the Defendant Tax District, Ontario County, on the B and B Funding Property in the amount of, upon information and belief, approximately $5,881.25, including fees, interest and penalties. See Exhibit E, attached hereto and incorporated herein.

55.     Plaintiff Spikes was the owner of certain real property located in Orleans County, New York, Town of Carlton, New York, and known as LOC NO/APN/Tax Map/Parcel No. 29.-1-15 (the "Spikes Property").

56.     Taxes were owed to the Defendant Tax District, Orleans County, on the Spike Property in the amount of approximately $3,734.05, including fees, interest and penalties. See Exhibit F, attached hereto and incorporated herein.

57.     Plaintiff DeWert was the owner of certain real property located in Steuben County, New York, Town of Corning, New York, and known as LOC NO/APN/Tax Map/Parcel No. 299.11-01-031.000 (the "DeWert Property").

58.     Taxes were owed to the Defendant Tax District, Steuben County, on the DeWert Property in the amount of approximately $2,268.44, including fees, interest and penalties. See Exhibit G attached hereto and incorporated herein.

59.     Plaintiff Denninger was the owner of certain real property located in Wayne County, New York, Town of Sodus, New York, and known as LOC NO/APN/Tax Map/Parcel No. 1901150 67118-00-783728 (the "Denninger Property").

60.     Taxes were owed to the Defendant Tax District, Wayne County, on the Denninger Property in the amount of approximately $2,479.55, including fees, interest and penalties. See Exhibit H, attached hereto and incorporated herein.

61.     Plaintiff Wilson was the owner of certain real property located in Wyoming County, New York, Town of Perry, New York, and known as LOC NO/APN/Tax Map/Parcel No. 282 100.12-1-12 (the "Wilson Property").

62.     Taxes were owed to the Defendant Tax District, Wyoming County, on the Wilson Property in the amount of approximately $7,961.57. See Exhibit I, attached hereto and incorporated herein.

63.     The power of taxation of real property in New York only lies with the State of New York. As the highest court in New York confirmed: there is an "overarching constitutional principle that the power of taxation lies with the State…" *In Matter of Baldwin Union Free Sch. Dist. v County of Nassau*, 22 N.Y.3d 606 (2014).

64.     Put another way, local governments (counties, cities, townships, villages, etc.) have no independent power to lay or collect property taxes. That power comes exclusively by delegation of the State's power to do so. *Expedia, Inc. v. City of N.Y. Dept. of Fin*., 22 N.Y.3d 121, 126–127 (2013):

> In New York, local governments lack an independent power to tax. The State Constitution vests the taxing power in the state legislature and authorizes the legislature to delegate that power to local governments. The State Constitution places fundamental limitations on such delegations. The legislature must describe with specificity the taxes authorized by any enabling statute. As a general rule, tax statutes should be strictly construed and limited to their terms, which should not be extended by implication. Any ambiguity in a

tax law should be resolved in favor of the taxpayer and against the taxing authority. (Internal citations omitted).

65.     The process established by New York state law provides not just for the levying and collection of property taxes, but also for placing of liens and taking of property for unpaid or delinquent taxes.

66.     New York law, RPTL 902, places an automatic lien on property when each property tax bill is issued. This lien attaches regardless of delinquency, automatically.

67.     Specifically, RPTL 902 provides:

The amount of all taxes, special ad valorem levies and special assessments levied upon any parcel of real property by the board of supervisors shall, except as otherwise expressly provided by law, be and become a lien thereon as of the first day of January of the fiscal year for which levied and shall remain a lien until paid.

68.     Failure to pay the amounts owed results in a delinquent tax under RPTL 1102[2].

69.     "Delinquent tax" is defined by RPTL 1102[2] as "an unpaid tax, special ad valorem levy, special assessment or other charge imposed upon real property by or on behalf of a municipal corporation or special district, plus all applicable charges, relating to any parcel which is included in the return of unpaid delinquent taxes prepared pursuant to section nine hundred thirty-six [936] of this chapter or such other general, special, or local law as may be applicable."

70.     The aforementioned RPTL 936[2], as referenced in RPTL 1102[2], allows an additional percentage to the delinquency amount:

In making the return of unpaid taxes, the collecting officer shall add five per centum [5%] to the amount of each tax as levied. In the event that the collecting officer fails to do so, the county treasurer shall make such addition. In a county in which there is a local law in effect pursuant to section nine hundred twenty-eight-b [928(b)] or section nine hundred seventy-two [972] of this chapter providing for the collection of taxes in installments, the five per centum [5%] provided by this subdivision shall not be added to the taxes which a real property owner has elected to pay in installments pursuant to section nine hundred twenty-eight-b [928(b)] or section nine hundred seventy-five [975] of this chapter. Such five per centum [5%] shall be added by the county treasurer to the amount of such taxes as shall have remained unpaid after the date upon which the last installment was due as

provided in such local law. The amount of such added per centum shall thereafter be deemed part of the amount of the unpaid tax.

71.     Further, the applicable additional "charges" as referenced in the definition of "delinquent tax" are, pursuant to RPTL 1102:

(a) the cost of the mailing or service of notices required or authorized by this article; (b) the cost of publication of notices required or authorized by this title; (c) the amount of any interest and penalties imposed by law; (d) the cost of recording or filing legal documents required or authorized by this article; and (e) the reasonable and necessary cost of any search of the public record required or authorized to satisfy the notice requirements of this article, and the reasonable and necessary expenses for legal services of a tax district in connection with a proceeding to foreclose a tax lien; provided, that: (i) a charge of up to one hundred fifty dollars per parcel shall be deemed reasonable and necessary to cover the combined costs of such searches and legal expenses, and such an amount may be charged without substantiation, even if salaried employees of the tax district performed the search or legal services; and (ii) a tax district may charge a greater amount with respect to one or more parcels upon demonstration to the satisfaction of the court having jurisdiction that such greater amount was reasonable and necessary.

72.     If delinquent taxes (as described above, being the principal and allowed additional charges and percentages) remain unpaid for ten (10) months from the lien date, the enforcing officer is authorized to file a list of delinquent properties with the County Clerk, per RPTL 1122.

73.     Specifically, RPTL 1122 provides:

Ten months after lien date, or as soon thereafter as is practicable, but no sooner than one month after the receipt of the return of unpaid taxes, the enforcing officer of each tax district shall execute a list of all parcels of real property, except those excluded from such list in the manner provided by section eleven hundred thirty-eight [1138] of this article, affected by delinquent tax liens held and owned by such tax district.

74.     Thereafter, when 11 additional months elapse without proper payment (that is, a total of 21 months after the lien date), the enforcing officer is authorized to bring a foreclosure action on the property pursuant to RPTL 1123.

75.     Specifically, RPTL 1123 provides:

Twenty-one months after lien date, or as soon thereafter as is practicable, the enforcing officer shall execute a petition of foreclosure pertaining to those properties which remain

18

subject to delinquent tax liens; provided, however, that in the case of property which is subject to a three or four year redemption period, such petition shall be executed thirty-three or forty-five months after lien date, respectively, or as soon thereafter as is practicable.

76.     If the owner of the property does not pay all the delinquent taxes and charges and percentage, a judgment is entered pursuant to RPTL 1123 and 1136, authorizing the divestiture of title of the property from the owner, and authorizing the enforcing officer, acting under color of state law, to file a deed taking full and complete title to the property from the owner and transferring it to the Tax District, here Defendants Chautauqua, Chemung, Genesee, Niagara, Ontario, Orleans, Steuben, Wayne, Wyoming Counties, as pertinent.

77.     Specifically, RPTL 1123 and 1136 provide:

Twenty-one months after lien date, or as soon thereafter as is practicable, the enforcing officer shall execute a petition of foreclosure pertaining to those properties which remain subject to delinquent tax liens; provided, however, that in the case of property which is subject to a three or four year redemption period, such petition shall be executed thirty-three or forty-five months after lien date, respectively, or as soon thereafter as is practicable. §1123.

All persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption. §1136[3].

78.     Upon taking of title of the property from the owner, the Tax District may keep the property for government use, or is authorized by RPTL 1166 to sell the property.

79.     Specifically, RPTL 1166 provides:

Whenever any tax district shall become vested with the title to real property by virtue of a foreclosure proceeding brought pursuant to the provisions of this article, such tax district is hereby authorized to sell and convey the real property so acquired, which shall include any and all gas, oil or mineral rights associated with such real property, either with or without advertising for bids, notwithstanding the provisions of any general, special or local law.

**BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE GWOREK
PROPERTY WITHOUT JUST COMPENSATION**

80.     Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Chautauqua County, New York moved for an Order and Judgment of Foreclosure in Supreme Court, Chautauqua County (Index No. K1-2022-05) with respect to several parcels of real property, including Plaintiff Gworek's Property, which the Court granted and entered on or about May 12, 2023. See Exhibit J, attached hereto and incorporated herein.

81.     Subsequent to the Court's grant and entry of the above order, on or about February 10, 2023, and pursuant to N.Y. Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Kimberly A. Meleen, Tax Enforcement Officer of the County of Chautauqua, conveyed and transferred title to the Gworek Property to the County of Chautauqua, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded on September 19, 2023 as Instrument # DE2023005919, in the Chautauqua County Clerk's Office. See Exhibit K, attached hereto and incorporated herein.

82.     That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

83.     On approximately June 29, 2023, and pursuant to Section 1166 and under the color of the laws of the State of New York, Chautauqua County auctioned off and sold the Gworek Property to a third-party for $45,100. See Exhibit L, attached hereto and incorporated herein.

84.     The Deed reflecting this sale and conveyance of the Gworek Property was recorded on September 19, 2023 as Instrument # DE2023005920. See Exhibit L, attached hereto and incorporated herein.

85.     The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

86.     Defendant Chautauqua County retained all the proceeds of this sale despite Plaintiff Gworek only owing approximately $6,713.87 in past due taxes and charges.

87.     Pursuant to and under color of New York state law, this excess was not returned to Plaintiff Gworek, and Plaintiff Gworek was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

88.     The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

## BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE MACLAURY PROPERTY WITHOUT JUST COMPENSATION

89.     Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Chemung County, New York moved for an Order and Judgment of Foreclosure in Chemung County Court (Index No. 2021-1237) with respect to several parcels of real property, including Plaintiff MacLaury's Property, which the Court granted and entered on or about March 16, 2023. See Exhibits B and M, attached hereto and incorporated herein.

90.     Subsequent to the Court's grant and entry of the above order, on or about March 28, 2023, and pursuant to N.Y. Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Jennifer Furman, Tax Enforcement Officer of the County of Chemung, conveyed and transferred title to the MacLaury Property to the County of Chemung, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded on March 28, 2023 as Instrument #

202304495, in the Chemung County Clerk's Office. See Exhibit N, attached hereto and incorporated herein.

91.     That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

92.     On approximately June 8, 2023, and pursuant to Section 1166 and under the color of the laws of the State of New York, Chemung County auctioned off and sold the MacLaury Property to a third-party for $55,400.

93.     The Deed reflecting this sale and conveyance of the MacLaury Property was recorded on June 16, 2023 as Instrument # 202308364. See Exhibit O, attached hereto and incorporated herein.

94.     The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

95.     Defendant Chemung County retained all the proceeds of this sale despite Plaintiff MacLaury only owing approximately $6,486.64 in past due taxes and charges.

96.     Pursuant to and under color of New York state law, this excess was not returned to Plaintiff MacLaury, and Plaintiff MacLaury was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

97.     The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

## BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE CORTRIGHT PROPERTY WITHOUT JUST COMPENSATION

98.     Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Genesee County, New York moved for an Order and

22

Judgment of Foreclosure in Supreme Court, Genesee County (Index No. 67831) with respect to several parcels of real property, including Plaintiff Cortright's Property, which the Court granted and entered on or about March 11, 2020. See Exhibit P, attached hereto and incorporated herein.

99.     Subsequent to the Court's grant and entry of the above order, on or about March 17, 2020 and pursuant to N.Y. Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Scott D. German, Treasurer of the County of Genesse and as Tax Enforcement Officer of the County of Genesee, conveyed and transferred title to the Cortright Property to the County of Genesee, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded on March 17, 2020 as Instrument # DE2020-387, in the Genesee County Clerk's Office. See Exhibit Q, attached hereto and incorporated herein.

100.    That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

101.    On approximately April 9, 2020, and pursuant to Section 1166 and under the color of the laws of the State of New York, Genesee County auctioned off and sold the Cortright Property to a third-party for $9,000. See Exhibit R, attached hereto and incorporated herein. The Deed reflecting this sale and conveyance of the Cortright Property was recorded on April 16, 2020 as Instrument # DE2020-489. See Exhibit R attached hereto and incorporated herein.

102.    The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

103.    Defendant Genesee County retained all the proceeds of this sale despite Plaintiff Cortright only owing approximately $3,725.91 in past due taxes and charges.

104. Pursuant to and under color of New York state law, this excess was not returned to Plaintiff Cortright, and Plaintiff Cortright was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

105. The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

**BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE POLLEY PROPERTY WITHOUT JUST COMPENSATION**

106. Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Niagara County, New York moved for an Order and Judgment of Foreclosure in Supreme Court, Niagara County (Index No. 170619/20) with respect to several parcels of real property, including Plaintiff Polley's Property, which the Court granted and entered on or about February 24, 2022. See Exhibit S, attached hereto and incorporated herein.

107. Subsequent to the Court's grant and entry of the above order, on or about July 5, 2022, and pursuant to N.Y. Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Kyle R. Andrews, Tax Enforcement Officer of the County of Niagara, conveyed and transferred title to the Polley Property to the County of Niagara, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded on July 8, 2022 as Instrument # 2022-13188, in the Niagara County Clerk's Office. See Exhibit T, attached hereto and incorporated herein.

108. That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

109. Subsequently and pursuant to Section 1166 and under the color of the laws of the State of New York, Niagara County auctioned off and sold the Polley Property to a third-party

for $27,300.00. The Deed reflecting this sale and conveyance of the Polley Property was recorded on July 15, 2022 as Instrument # 2022-13843. See Exhibit U, attached hereto and incorporated herein.

110.    The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

111.    Defendant Niagara County retained all the proceeds of this sale despite Plaintiff Polley only owing approximately $2,778.70 in past due taxes and charges.

112.    Pursuant to and under color of New York state law, this excess was not returned to Plaintiff Polley, and Plaintiff Polley was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

113.    The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

**BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE B AND B FUNDING PROPERTY WITHOUT JUST COMPENSATION**

114.    Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Ontario County, New York moved for an Order and Judgment of Foreclosure in Supreme Court, Ontario County (Index No. 131192) with respect to several parcels of real property, including Plaintiff B and B Funding's Property, which the Court granted and entered.

115.    Subsequent to the Court's grant and entry of the above order, on or about May 19, 2023 and pursuant to N.Y. Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Jeffrey S. Trickler of the County of Ontario (or his predecessor) and as Tax Enforcement Officer of the County of Ontario, conveyed and transferred title to the B and B Funding Property to the County

of Ontario, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded on May 19, 2023 as Document Number Control 202305190060, Book D01518, Page 0304 in the Ontario County Clerk's Office. See Exhibit V, attached hereto and incorporated herein.

116.    Subsequently, and pursuant to Section 1166 and under the color of the laws of the State of New York, Ontario County sold the B and B Funding Property to a third-party for $86,700. The Deed reflecting this sale and conveyance of the B and B Funding Property was recorded on June 8, 2023 as Document Number Control 202306080079, Book D01519, Page 0372 in the Ontario County Clerk's Office. See Exhibit W, attached hereto and incorporated herein.

117.    The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

118.    Defendant Ontario County retained all the proceeds of this sale despite Plaintiff B and B Funding only owing approximately $5,881.25.

119.    Pursuant to and under color of New York state law, this excess was not returned to Plaintiff B and B Funding, and Plaintiff B and B Funding was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

120.    These acts constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

121.    The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

**BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE SPIKES PROPERTY
WITHOUT JUST COMPENSATION**

122.    Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Orleans County, New York moved for an Order and Judgment of Foreclosure in Supreme Court, Orleans County (Index No. 22-47738) with respect to several parcels of real property, including Plaintiff Spikes's Property, which the Court granted and entered on or about June 30, 2023. See Exhibit X, attached hereto and incorporated herein.

123.    Subsequent to the Court's grant and entry of the above order, on or about August 22, 2023 and pursuant to N.Y. Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Kimberly C.L. DeFrank of the County of Orleans and as Tax Enforcement Officer of the County of Orleans, conveyed and transferred title to the Spikes Property to the County of Orleans, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded on August 22, 2023 as Document Number 2023-00121211, Book D, Volume 871, Page 4753 in the Orleans County Clerk's Office. See Exhibit Y, attached hereto and incorporated herein.

124.    That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

125.    On approximately September 1, 2023, and pursuant to Section 1166 and under the color of the laws of the State of New York, Orleans County auctioned off and sold the Spikes Property to a third-party for $31,000. See Exhibit Z, attached hereto and incorporated herein.

126.    The Deed reflecting this sale and conveyance of the Spikes Property was recorded on September 5, 2023 as Document Number 2023-00121352, Book D, Volume 871, Page 5663 in the Orleans County Clerk's Office. See Exhibit Z, attached hereto and incorporated herein.

127.    The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

128.    Defendant Orleans County retained all the proceeds of this sale despite Plaintiff Spikes only owing approximately $3,734.05 in past due taxes and charges.

129.    Pursuant to and under color of New York state law, this excess was not returned to Plaintiff Spikes, and Plaintiff Spikes was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

130.    The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

## BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE DEWERT PROPERTY WITHOUT JUST COMPENSATION

131.    Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Steuben County, New York moved for an Order and Judgment of Foreclosure in Supreme Court, Steuben County (Index No. 2021-1173CV) with respect to several parcels of real property, including the DeWert Property, which the Court granted on or about May 8, 2023 and entered on or about May 9, 2023. See Exhibit AA, attached hereto and incorporated herein.

132.    Subsequent to the Court's grant and entry of the above order, on or about May 11, 2023 and pursuant to N.Y. Real Prop. Tax § 1102 et seq; §1132; and/or § 1194, inter alia, Tammy Hurd-Harvey of the County of Steuben and as Tax Enforcement Officer of the County of Steuben, conveyed and transferred title to the DeWert Property to the County of Steuben, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded on May 12, 2023

in Book 3028, Page 51 in the Steuben County Clerk's Office. See Exhibit BB, attached hereto and incorporated herein.

133.    That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

134.    On approximately July 12, 2023, and pursuant to Section 1166 and under the color of the laws of the State of New York, Steuben County auctioned off and sold the DeWert Property to a third-party for $64,540. The Deed reflecting this sale and conveyance of the DeWert Property was recorded on July 27, 2023 in Book 3044, Page 124 in the Steuben County Clerk's Office. See Exhibit CC, attached hereto and incorporated herein.

135.    The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

136.    Defendant Steuben County retained all the proceeds of this sale despite Plaintiff DeWert only owing approximately $2,268.44 in past due taxes and charges.

137.    Pursuant to and under color of New York state law, this excess was not returned to Plaintiff DeWert, and Plaintiff DeWert was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

138.    The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

**BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE DENNINGER
PROPERTY WITHOUT JUST COMPENSATION**

139.    Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Wayne County, New York moved for an Order and Judgment of Foreclosure in Supreme Court, Wayne County (Index No. Index No. 83996) with

respect to several parcels of real property, including the Denninger Property, which the Court granted and entered on May 7, 2021. See Exhibit DD, attached hereto and incorporated herein.

140.    Subsequent to the Court's grant and entry of the above order, on June 15, 2021, Patrick J. Schmitt, County Treasurer of the County of Wayne and as Tax Enforcement Officer of the County of Wayne, conveyed and transferred title to the Denninger Property to the County of Wayne, New York itself. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. This Deed was recorded on August 6, 2021 as Instrument No. R9233380 in the Wayne County Clerk's Office. See Exhibit EE, attached hereto and incorporated herein.

141.    Pursuant to Section 1166 and under the color of the laws of the State of New York, Wayne County auctioned off and sold the Denninger Property to a third-party for $118,000. The Deed reflecting this sale and conveyance of the Denninger Property was recorded on August 11, 2021 in/as Book 923, Page 96478 in the Wayne County Clerk's Office. See Exhibit FF, attached hereto and incorporated herein.

142.    The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

143.    Defendant Wayne County retained all the proceeds of this sale despite Plaintiff Denninger only owing approximately $2,479.55 in past due taxes and charges.

144.    Pursuant to and under color of New York state law, this excess was not returned to Plaintiff Denninger, and Plaintiff Denninger was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

145.    These acts constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

146.    The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

## BACKGROUND FACTS ON DEFENDANTS' TAKING OF THE WILSON PROPERTY WITHOUT JUST COMPENSATION

147.    Pursuant to and under color of the laws of the State of New York, to wit, N.Y. Real Prop. Tax § 1102 et seq., Defendant Wyoming County, New York moved for an Order and Judgment of Foreclosure in Supreme Court, Wyoming County (Index No. 51284) with respect to several parcels of real property, including the Wilson Property, which the Court granted on October 13, 2021 and entered on October 18, 2021. See Exhibit GG, attached hereto and incorporated herein.

148.    Subsequent to the Court's grant and entry of the above order, on or about October 29, 2021, Defendant Wyoming auctioned off and sold the Wilson property to a third-party purchaser for $37,250. See Exhibit HH, attached hereto and incorporated herein.

149.    Pursuant to the Court's grant and entry of the above order, on or about November 22, 2021, Cheryl D. Mayer, County Treasurer of the County of Wyoming and as Tax Enforcement Officer of the County of Wyoming, conveyed and transferred title to the Wilson Property "on behalf of and for (Plaintiff) Donna Wilson" to this third-party purchaser as assignee of the County of Wyoming. § N.Y. Real Prop. Tax § 1102 et seq; §1132; § 1194. The Deed reflecting this sale and conveyance was recorded on November 22, 2021 as Document # 4606 and at Book 807, Page 678 in the Wyoming County Clerk's Office. See Exhibit II, attached hereto and incorporated herein.

150.    That act constituted a 'taking' under the Fifth Amendment of the United States Constitution, and under Article I, Section 7 of the New York Constitution.

151.    The sale produced surplus equity, being an excess above and beyond the amount lawfully owed by Plaintiff for delinquent taxes and charges.

152.    Defendant Wyoming County retained all the proceeds of this sale despite Plaintiff Denninger only owing approximately $7,961.57 in past due taxes and charges.

153.    Pursuant to and under color of New York state law, this excess was not returned to Plaintiff Wilson, and Plaintiff Wilson was not provided adequate procedure to seek just compensation for the taking of their surplus proceeds.

154.    The members of the putative class are similarly situated, having property taken from them pursuant and under color of the laws of the State of New York, in excess of the amount they owed for taxes or other obligations, and having been denied just compensation.

## GOVERNMENTAL ACTIONS AND COLOR OF LAW

155.    The collection in New York of property taxes and certain other obligations is governed by New York state law.

156.    Bodies politic, political subdivisions, and/or tax districts in New York receive their authority to make and levy taxes and other obligations, and to engage in collections of same and the disposition of the property taken in those collections and the proceeds derived therefrom, pursuant to the laws of the State of New York and do so under color of those laws.

157.    New York law allows tax districts to foreclose on and take title to real property based on unpaid taxes or other obligations. N.Y. Real Prop. Tax § 1102 et seq.

158.    This process provides that when real property taxes for an identified property have not been paid, the tax district can foreclose the owner's right and title to the property, take title to the subject property, and then sell the property or keep it. These actions are recorded as public records and can be verified by those records.

159.    As stated above, this constitutes a taking of the subject property from the owner by the tax district.

160.    That taking is a violation of the Fifth Amendment to the United States Constitution, and Article I, Section 7 of the New York Constitution, if just compensation is not paid.

161.    However, subsequent to these takings conducted by Defendants, through their Enforcement Officers, and taken under the authority of the laws of the Defendant, State of New York and under color of those laws, Plaintiffs and the putative class members were not paid just compensation as required by the Fifth Amendment to the U.S. Constitution and the New York Constitution, Article I, Section 7.

162.    Specifically, through the statutory scheme described above, the State of New York authorized not only the collection of taxes and other fees through the taking of the property, it authorized and perpetrated the taking of the equity in the property in excess of the amount owed by the property owner.

163.    This New York State statutory authorization was exercised by the State of New York's bodies politic, political subdivisions, and tax districts, including the Defendants in this action.

164.    Those powers were exercised in this case against the named Plaintiffs and against the members of the putative class, all under color of those laws.

165.    The persons who undertake the ministerial steps to take and retain property, including the property of the named Plaintiffs, and the property of the putative class members, did so (and continue to do so today) solely and entirely through the 'authority' and under the color of the laws of the State of New York.

166.    As it relates to the named Plaintiffs and members of the putative class, their property taken during the class period had a value in excess of the amount owed to the government for the taxes and/or other obligations for which the property was taken.

167.    New York law and the actions alleged herein taken under color of that law, afforded the named Plaintiffs and the putative class members no opportunity to obtain that excess, and following sale (or retention of their property for government use) they did not receive that excess.

168.    The takings that are challenged by this action occurred in two distinct ways. First, the citizen's property was taken under color of law for nonpayment of taxes or other obligations and sold, with proceeds in excess of the amount owed by the citizen, but, acting again under color of law, that excess was not returned to the citizen.

169.    Second, and alternatively, the property was taken under color of law for nonpayment of taxes or other obligations and was not sold but was kept by the government; the property value was in excess of the amount owed by the citizen; and, acting again under color of law, Defendants failed to return this excess to these citizens.

170.    The New York State legislature attempted to remedy the foregoing conduct and practice, accomplished under color of New York state law, of taking and keeping property or its proceeds in excess of monies owed when it passed Chapter 55 of the Laws of 2024 (Assembly Bill A8805C and Senate Bill S8305C, signed by the governor on or about April 20, 2024).

171.    However, certain sections of Chapter 55 of the Laws of 2024 (Assembly Bill A8805C and Senate Bill S8305C, signed by the governor on or about April 20, 2024) are unconstitutional, specifically, the following:

> This act shall take effect immediately and shall be deemed to have been in full force and effect on and after May 25, 2023, provided that:… (c) **In any taxing jurisdiction, where**

**a tax-foreclosed property was sold prior to May 25, 2023, a claim for surplus attributable to such sale may be maintained if and only if a proceeding to compel such tax district to distribute such surplus to the petitioner or petitioners had been initiated pursuant to subdivision 1 of section 7803 of the civil practice law and rules, such proceeding was commenced in a timely manner as provided by section 217 of such chapter, and such proceeding was still active on the effective date of this act.** (Emphasis added).

172.    This provision vitiates Plaintiff's and the putative class members' vested federal constitutional claims for just compensation to remedy, inter alia, Defendants' violations of the Takings Clause.

173.    Therefore, unconstitutional conduct is ongoing, and continues as current practice and is current 'law' in New York. This causes a persistent and continuing violation of both the United States and the New York constitutions, providing basis for declaratory and injunctive relief.

## VIOLATIONS OF THE UNITED STATES CONSTITUTION

174.    In *Tyler v. Hennepin County,* the United States Supreme Court, in a 9-0 decision, 1) declared unconstitutional state laws like New York's that authorize and result in the practice of taking and retaining excess proceeds of tax foreclosures and tax sales; and 2) declared a violation of a citizen's constitutional rights where such takings occur. *Tyler v. Hennepin County* (2023), 598 U.S. 631, 143 S.Ct. 1369.

175.    The reasoning of the *Tyler* decision is straightforward. The Constitution's Taking Clause prohibits the 'taking of property without just compensation.' U.S. Const., Amend 5. That prohibition applies to the federal government based on the Fifth Amendment, and state government through the Fourteenth Amendment. *Tyler* at 637-38.

176.    The prohibition is not against states enacting laws to collect taxes and other obligations, which is permitted to satisfy the citizen's tax obligations; it is against taking more than is owed, as is happening in this case. The government has the

> power to sell [plaintiff's] home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a "classic taking in which the government directly appropriates private property for its own use." *Tahoe-Sierra Preservation Council, Inc.* v. *Tahoe Regional Planning Agency*, 535 U. S. 302, 324 (2002) (internal quotation marks and alteration omitted). [Plaintiff] has stated a claim under the Takings Clause and is entitled to just compensation.

*Tyler* at 639.

## NEW YORK STATUTES WHICH CREATED AND RESULTED IN THIS TAKING VIOLATION

177.    The laws of the State of New York create the authority, and thereby the color of law, for retaining proceeds from foreclosed or seized property, in excess of the amount owed by the citizen.

178.    Specifically, in violation of both the New York and U.S. Constitution, New York Real Property Tax Law, Chapter 50-a, Article 11 ("Article 11") provides that proceeds from the sale of foreclosed property may be kept, in excess of taxes (and concomitant fees) owed.

179.    This violates the Takings Clause.

180.    Further, New York Real Property Tax Law § 1136[3] provides for seizure of foreclosed property and thereupon grants title to the government in fee simple, so that "all persons . . . who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel, shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption."

36

181.    This creates the constitutional violation here, because the citizen's property is foreclosed on in a way that the citizen loses all right to the property, including any property value in excess of the taxes owed by the individual to the taxing entity. *See, e.g.*, *Hoge v. Chautauqua Cnty.*, 173 A.D.3d 1731 (4th Dept. 2019).

182.    In addition to violating the Takings Clause of the United States Constitution, the conduct herein violates Article I, Section 7 of the New York Constitution, which identically states that, "[p]rivate property shall not be taken for public use without just compensation."

183.    The subject conduct in this action further violates both the United States and the New York constitutional ban against excessive fines. The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed." Article I, Section 5 of the New York Constitution provides: "Excessive bail shall not be required nor excessive fines imposed…"

## COUNT I
### Violation of the Takings Clause of the
### Fifth Amendment to the United States Constitution

184.    Plaintiffs reallege all averments as if fully rewritten herein.

185.    The conduct of Defendants and their respective Enforcement Officers as alleged herein, resulted in the taking of the property of Plaintiffs and the putative class, under color of state law.

186.    By the conduct as alleged herein, Defendants took the property of Plaintiffs and the putative class without just compensation.

187.    The property of Plaintiffs and the putative class was taken both physically, and under color of law, depriving Plaintiffs and the putative class their right, title, and interest to same.

188.    Defendants are now in the possession of the property of the Plaintiffs and the putative class; or sold same and received the proceeds of such sale.

189.    The value of the property, or the proceeds from the sale thereof, exceeded the amount owed for the taxes or other charges for which the property was seized and taken.

190.    Defendants have not given to Plaintiffs or to the putative class those excess monies and/or property, or its value.

191.    As a direct and proximate result of the foregoing, Plaintiffs and the putative class have not received just compensation for the property seized and taken from them.

192.    Defendants have not provided Plaintiffs or the class members adequate procedure to seek just compensation for the taking of their surplus proceeds

193.    Plaintiffs and the putative class members have been harmed and damaged by the foregoing, including but not limited to their loss of their surplus equity, for which they demand and are entitled to just compensation relief under law and equity.

## COUNT II
### Takings in violation of Article I, § 7, of the New York State Constitution

194.    Plaintiffs reallege all averments as if fully rewritten herein.

195.    Defendants, acting as political subdivisions, bodies politic, and/or Tax Districts in the State of New York, or acting as an authorized agent and officer thereof, seized and took the property of Plaintiffs and the putative class.

196.    Said seizure and taking was for unpaid taxes and/or other obligations.

197.    The foregoing actions were conducted pursuant to the authority of New York Real Property Law.

198.    The seizure and taking of the property of the Plaintiffs and the putative class members was for a specific amount alleged to be owed by the property owner.

38

199.    Either the value of the property (if not sold at foreclosure after the taking), or the proceeds of the sale of the property (as to property sold following the taking), was in excess of the specified total amount (principal, costs and percentage) alleged to be owed by the property owner.

200.    Defendants did not return to the property owners – neither the Plaintiffs nor the putative class members – that excess, in violation of Article I, Section 7 of the New York Constitution which requires just compensation for the taking of private property.

201.    As a direct and proximate result of the foregoing, Plaintiffs and the putative class suffered injury, harm and damage, including at minimum the loss of their surplus equity, for which they demand, and are entitled to, just compensation and/or relief in law and equity.

**COUNT III**
**Imposition of excessive fines in violation of the**
**Eighth Amendment to the United States Constitution**

202.    Plaintiffs reallege all averments as if fully rewritten herein.

203.    The seizure and taking of the property of the Plaintiffs and the putative class was in response to the failure of Plaintiffs and the putative class members to pay taxes or other obligation owed to the government.

204.    New York state law, including the provisions cited above, were enacted, at least in part, to deter the non-payment of taxes owed the government.

205.    Defendants took their actions alleged herein in furtherance of that purpose.

206.    The amounts collected from Plaintiffs and the putative class members, through the taking and keeping of the excess, had no correlation to the amount owed to the government.

207.    The seizure and taking alleged herein was conducted under color of state law, as averred above.

208.    The seizure and taking of the excess equity as alleged herein was a violation of the Eight Amendment to the United States Constitution's prohibition against excessive fines.

209.    As a direct and proximate result, Plaintiffs and the putative class suffered injury, harm and damage, including at minimum the loss of the excess equity, for which they demand, and are entitled to, relief in law and equity.

## COUNT IV
### Imposition of excessive fines in violation of Article I §5 of the New York Constitution

210.    Plaintiffs reallege all averments as if fully rewritten herein.

211.    The provisions of Article I, Section 5 of the New York State Constitution prohibit the imposition of excessive fines in the same manner and using the same analysis as the Eighth Amendment to the United States Constitution.

212.    Defendants took these actions, as averred above, for the same reasons and in the same manner as averred.

213.    This imposition and taking of all of the property of the Plaintiffs and the putative class, and not limited to the amount actually owed, was an excessive fine in violation of Article I, Section 5 of the New York Constitution.

214.    As a direct and proximate result, Plaintiffs and the putative class suffered injury, harm and damage, including at minimum the loss of the excess equity, for which they demand, and are entitled to, relief in law and equity.

## COUNT V
### Declaratory Judgment that N.Y. Real Property Tax Law as Described Herein, inter alia, Violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution

215.    Plaintiffs reallege all averments as if fully rewritten herein.

216.    In material part, the Declaratory Judgments Act, 28 U.S.C. § 2201 (a), provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States,

upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

217.    The parties currently have a disagreement and controversy, *inter alia*, whether: the conduct alleged herein is a taking for purposes of the United State Constitution, Fifth Amendment, and/or Article I, Section 7 of the New York Constitution; whether that taking was without just compensation; and, if so, whether Plaintiffs and the putative class members have rights to relief.

218.    Plaintiffs therefore requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law, as described herein, inter alia, violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

219.    Further, Plaintiffs requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law, as described herein, inter alia, violates Article I, Section 7 of the New York Constitution and/or Article I, Section 5 of the New York Constitution.

### COUNT VI
**Declaratory Judgment that Chapter 55 of the Laws of 2024 (Assembly Bill A8805C and Senate Bill S8305C, signed by the governor on or about April 20, 2024) violates, inter alia, the Fifth and Fourteenth Amendments to the United States Constitution to the extent it limits, forecloses, and/or vitiates Plaintiffs' and the putative Class Members' claims for just compensation under the Fifth Amendment**

220.    Plaintiffs reallege all averments as if fully rewritten herein.

221.    In material part, the Declaratory Judgments Act, 28 U.S.C. § 2201 (a), provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

41

interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

222.    The parties currently have a disagreement and controversy, *inter alia*, whether certain language of Chapter 55 of the Laws of 2024 (Assembly Bill A8805C and Senate Bill S8305C, signed by the governor on or about April 20, 2024) is unconstitutional, specifically, the following:

> This act shall take effect immediately and shall be deemed to have been in full force and effect on and after May 25, 2023, provided that:… **(c) In any taxing jurisdiction, where a tax-foreclosed property was sold prior to May 25, 2023, a claim for surplus attributable to such sale may be maintained if and only if a proceeding to compel such tax district to distribute such surplus to the petitioner or petitioners had been initiated pursuant to subdivision 1 of section 7803 of the civil practice law and rules, such proceeding was commenced in a timely manner as provided by section 217 of such chapter, and such proceeding was still active on the effective date of this act.** (Emphasis added).

223.    This provision vitiates Plaintiff's and the putative class members' vested federal constitutional claims for just compensation to remedy, inter alia, Defendants' violations of the Takings Clause.

224.    Plaintiffs therefore requests this Court, pursuant to 28 U.S.C. § 2201 et seq., to declare and find that on its face, and/or as applied, N.Y. Real Prop. Tax Law, as described herein, inter alia, violates the Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT VII
## Unjust Enrichment

225.    Plaintiffs reallege all averments as if fully rewritten herein.

226.    Defendants have been enriched at Plaintiffs' and the putative class members' expense.

227.    Defendants have received money or value to which they are not entitled.

228.    Defendants were enriched when they either retained Plaintiffs' property and the properties of the putative class members, or sold said properties and collected and retained the surplus proceeds of that sale.

229.    Defendants are not entitled to the surplus proceeds or property because Plaintiffs and the putative class members are "entitled to the surplus in excess of the debt owed" to Defendants. *Tyler*, 598 U.S. at 642.

230.    By taking the value of Plaintiffs' and each putative class members' excess, Defendants took more than was required to satisfy a tax debt, forcing Plaintiffs and the putative class members to make a greater contribution to Defendants than they owed.

231.    It is against equity and good conscience to permit Defendants to retain these excess proceeds.

232.    For the foregoing reasons, Plaintiffs and the putative class members are owed restitution in the amount of the excess proceeds collected by the Defendants.

## COUNT VIII
## Money Had and Received

233.    Plaintiffs reallege all averments as if fully rewritten herein.

234.    Defendants received money belonging to Plaintiffs and each putative class member.

235.    Defendants benefitted from receipt of said money.

236.    Under principles of equity and good conscience, Defendants should not be permitted to keep the excess.

237.    Defendants received money belonging to Plaintiffs and the putative class members when they collected the surplus proceeds to which Plaintiffs and the putative class members were entitled. *See Tyler*, 598 U.S. at 642.

238.     By taking the value of Plaintiffs' and each putative class members' excess, Defendants took more than was required to satisfy a tax debt, forcing Plaintiffs and the putative class members to make a greater contribution to Defendants than they owed.

239.     Permitting Defendants to retain the excess proceeds and/or the properties themselves, in excess of the amount owed, would violate the principles of equity and good conscience.

240.     For the foregoing reasons, Defendants owe Plaintiffs and the putative class members restitution in the amount of the excess proceeds they collected and/or retained.

## COUNT VIV
## Inverse Condemnation

241.     Plaintiffs reallege all averments as if fully rewritten herein.

242.     Defendants have intruded onto Plaintiffs' and each putative class member's property rights to such a degree that the conduct, as alleged herein, amounts to a compensable constitutional taking.

243.     Plaintiffs and the putative class members have suffered harm and/or damages in an amount to be proven at trial for the failure of Defendants to provide just compensation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment for themselves and the putative class(es), as follows:

   a) A determination that this action may proceed as a class action pursuant to Federal Rules of Civil Procedure 23(b) with Plaintiffs as class representatives, and the undersigned as Class Counsel;

b) For judgment for Plaintiffs and the putative class, including but not limited to the amount of the excess (as referenced in this Complaint); interest thereon; costs; and attorney fees;

c) For a declaration the New York Real Property Tax Law, as described herein, is unconstitutional on its face and/or as applied;

d) For a declaration that the practice challenged herein, of taking real property in excess of the amount of the taxes or other obligations for which the property was seized, and retaining such excess, is unconstitutional;

e) For disgorgement, restitution, and/or equitable relief as Plaintiffs and the putative class are entitled;

f) For all other or further compensatory and any other damages as Plaintiffs and the putative class are entitled;

g) For a preliminary and thereafter permanent injunction against Defendants, their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, who receive notice of the Order, from future use or enforcement the New York Real Property Tax Law, as described herein, or of any practice that takes, by seizure, foreclosure, process, mesne process or otherwise, private property for payment of taxes or other obligation, in an amount in excess of the amount owed by the owner for which the seizure was conducted, without returning that excess to the owner from whom the property was taken;

h) For just compensation for inverse condemnation of the private property of Plaintiffs and the putative class;

i) For prejudgment and post-judgment interest, as permitted by law;

j) For a recovery of all costs, reasonable litigation expenses, and reasonable attorneys' fees, as permitted by law, including but not limited to as provided by 42 U.S.C. § 1988 and New York law; and/or

k) For such other and further legal, declaratory, injunctive and equitable relief as the Court may deem just and proper.

## Demand for Jury Trial

Plaintiffs and the putative class members demand trial by jury in the maximum number allowed by law.

DATED: July 21, 2024

/s/ Robert P. Yawman
Steven E. Cole, Esq. (Bar No. 2697332)
Robert P. Yawman, Esq. (Bar No. 5195953)
Adams Leclair LLP
1200 Bausch and Lomb Place
Rochester, New York 14604
(585) 327-4200 // (585) 327-4200 Fax
Email: scole@adamsleclair.law
            ryawman@adamsleclair.law


Patrick J. Perotti, Esq. (pro hac vice to be filed)
Nicole T. Fiorelli, Esq. (pro hac vice to be filed)
Frank A. Bartela, Esq. (pro hac vice to be filed)
Patrick J. Brickman, Esq. (pro hac vice to be filed)
Shmuel S. Kleinman, Esq. (pro hac vice to be filed)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077
(440) 352-3391 // (440) 352-3469 Fax
Email: pperotti@dworkenlaw.com
            nfiorelli@dworkenlaw.com
            fbartela@dworkenlaw.com
            pbrickman@dworkenlaw.com
            skleinman@dworkenlaw.com

Ronald P. Friedberg, Esq. (pro hac vice to be filed)
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Blvd., Suite 500
Cleveland, OH 44122
(216) 831-0042 // (216) 831-0542 Fax
Email: rfriedberg@meyersroman.com

Gregory P. Hansel, Esq. (pro hac vice to be filed)
PRETI FLAHERTY BELIVEAU &
PACHIOS, CHARTERED, LLP
One City Center
P.O. Box 9546
Portland, ME 04112
(207)791-3000
Email: ghansel@preti.com

David M. Giglio, Esq.
DAVID M. GIGLIO & ASSOCIATES, LLC
13 Hopper Street
Utica, NY 13501
(315) 797-2854
Email: davidgigliolaw@yahoo.com

George F. Carpinello, Esq.
BOIES SCHILLER FLEXNER LLP
30 South Pearl Street, 11th Floor
Albany, NY 12207
(518) 434-0600 // (518) 434-0665
Email: gcarpinello@bsfllp.com

Joseph C. Kohn, Esq. (pro hac vice to be filed)
KOHN SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
Email: jkohn@kohnswift.com

Nathan J. Fink, Esq. (pro hac vice to be filed)
FINK BRESSACK
38500 Woodward Avenue Suite 350
Bloomfield Hills, MI 48304
(248) 971-2500
Email: nfink@finkbressack.com

Jonathan D. Pincus, Esq.
JONATHAN D. PINCUS, ESQ.
10 Whitestone Ln
Rochester, NY 14618-4118
(585) 732-8515
Email: jdp@jdpincus.com

*Attorneys for Plaintiffs*